In the Matter of Willie **BATTLE**, Debtor.

**Bankruptcy No. 93–52180.**

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Feb. 24, 1994.

Camille Hope, Macon, GA, the Chapter 13 Trustee.

Richard H. Siegel, Atlanta, GA, for Sun-Trust Mortg., Inc.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Willie Battle, Debtor, filed a petition under Chapter 13 of the Bankruptcy Code on August 2, 1993. Camille Hope, Standing Chapter 13 Trustee (hereinafter "Trustee"), filed an "Objection to Claim" on December 9, 1993. Trustee contends that SunTrust Mortgage, Inc. is not entitled to payment of interest on its arrearage claim. SunTrust filed its response to Trustee's objection and a motion to dismiss Debtor's Chapter 13 case on January 5, 1994.[1] Trustee's objection came on for hearing before the Court on February 9, 1994. The Court, having considered the record and the arguments of counsel, now publishes this memorandum opinion.

SunTrust holds a deed to secure debt on a residence now or formerly owned by Debtor.[2] A default occurred on the underlying obligation. Debtor filed his Chapter 13 bankruptcy case on August 2, 1993, to stay a foreclosure on the residence. His proposed Chapter 13 plan, filed on August 14, 1993, was duly served on SunTrust. The plan proposed to pay SunTrust its arrearage without interest. The plan proposed that another secured creditor would receive twelve percent interest on its claim. Thus, the plan clearly showed that Debtor proposed to pay interest to a creditor, but not to SunTrust.

Debtor's mailing matrix shows that notices were sent to SunTrust. SunTrust was represented by counsel at the meeting of creditors,[3] which was held on August 31, 1993.

SunTrust filed an amended proof of claim on September 8, 1993. The claim asserts a principal balance owed on the mortgage of

Brenda C. Youmas, Macon, GA, for debtor.

1. SunTrust did not urge its motion to dismiss at the February 9, 1994, hearing.

2. The property had been the marital residence of Debtor and his former spouse.

3. 11 U.S.C.A. § 341(a) (West 1993).

$33,478.20.[4] The claim also asserts an arrearage claim in the amount of $4,934.69,[5] which includes $777.43 for thirty-six months of interest on the arrearage. Counsel for SunTrust stated that the $777.43 represents the "estimated" interest that would accrue on the arrearage over the term of Debtor's Chapter 13 plan.

The Court notes that SunTrust's claim for estimated or unmatured interest violates section 502(b)(2) of the Bankruptcy Code.[6] An oversecured creditor is entitled to preconfirmation and postconfirmation interest on a home mortgage arrearage that is cured through a Chapter 13 plan. *Rake v. Wade,* —— U.S. ——, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993).[7] Simply stated, an oversecured creditor· is entitled to interest on its arrearage claim, but the oversecured creditor may not claim an amount for interest that has not matured.

A confirmation hearing on Debtor's Chapter 13 plan was held on October 6, 1993. SunTrust did not object to confirmation even though the proposed plan clearly provided that no interest would be paid on the arrearage. The Court confirmed the plan, and an order of confirmation was entered on October 25, 1993. The confirmed plan provides that the arrearage owed to SunTrust will be cured by Debtor making monthly payments of $152 and that no interest will be paid on the arrearage. SunTrust did not appeal the order of confirmation and does not contend that the order of confirmation was procured by fraud.

4. Debtor's former wife apparently will pay the principal.

5. The arrearage claim includes $2,851.94 for 7 monthly payments of $407.42 each, $700 for attorney's fees, $160 for advertising costs, $275 for appraisal fee, $130.32 for late charges, $40 for property inspection, and $777.43 for 36 months of interest on the arrearage.

6. 11 U.S.C.A. § 502(b)(2) (West 1993). This section provides:

§ 502. **Allowance of claims or interests**
. . . .
(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after

SunTrust asserts that an oversecured creditor is entitled to interest on an arrearage that is cured through a Chapter 13 plan. SunTrust would have been entitled to interest on the arrearage if it had objected to confirmation of Debtor's Chapter 13 plan. The Court could not have confirmed Debtor's Chapter 13 plan if SunTrust had objected to confirmation. 11 U.S.C.A. § 1325(a)(5) (West 1993); *Rake v. Wade,* —— U.S. at —— – ——, 113 S.Ct. at 2190–91. SunTrust, however, contends that it is entitled to interest on the arrearage even though it did not object to confirmation. SunTrust contends that "the plan was proposed by a means forbidden by law and should not have been confirmed, whether or not SunTrust objected."

Section 1327(a) of the Bankruptcy Code [8] provides:

§ 1327. **Effect of confirmation**
(a) The provisions of a confirmed plan bind the debtor and each creditor, *whether or not the claim of such creditor is provided for by the plan,* and whether or not such creditor has objected to, has accepted, or has rejected the plan.

11 U.S.C.A. § 1327(a) (West 1993) (emphasis added).

The only provision in the Bankruptcy Code that provides for revocation of an order of confirmation is section 1330(a),[9] which provides:

§ 1330. **Revocation of an order of confirmation**
(a) On request of a party in interest at any time within 180 days after the date of

notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that—
. . . .
(2) such claim is for unmatured interest;
11 U.S.C.A. § 502(b)(2) (West 1993).

7. *Rake v. Wade* was decided by the Supreme Court on June 7, 1993. Debtor's Chapter 13 case was filed on August 2, 1993, some two months after the Court's decision.

8. 11 U.S.C.A. § 1327(a) (West 1993).

9. 11 U.S.C.A. § 1330(a) (West 1993).

the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

11 U.S.C.A. § 1330(a) (West 1993).

SunTrust does not contend that the order of confirmation was procured by fraud.

*Collier on Bankruptcy,* a leading treatise on bankruptcy, discusses the finality of confirmation orders and states:

■—**Plan Binds Debtor and All Creditors; § 1327(a).**

Section 1327(a) is derived from Bankruptcy Act § 657. The provisions of a confirmed chapter 13 plan bind the debtor and all creditors. It makes no difference whether the creditor is provided for by the plan, or has accepted, rejected, or objected to the plan. Upon becoming final, the order confirming a chapter 13 plan represents a binding determination of the rights and liabilities of the parties as ordained by the plan. Absent timely appeal, the confirmed plan is *res judicata* and its terms are not subject to collateral attack. The *res judicata* effect of confirmation may be eliminated only if confirmation is revoked, or if the case is later dismissed or converted to another chapter.

The purpose of section 1327(a) is the same as the purpose served by the general doctrine of *res judicata.* There must be finality to a confirmation order so that all parties may rely upon it without concern that actions which they may thereafter take could be upset because of a later change or revocation of the order. . . .

The binding effect of the confirmation order establishes the rights of the debtor and creditors as those which are provided in the plan. *It is therefore incumbent upon creditors with notice of the chapter 13 case to review the plan and object to the plan if they believe it to be improper; they may ignore the confirmation hearing only at their peril.* . . .

. . . *A creditor that had the opportunity to object that the plan did not meet the standards for confirmation, which provide the protections Congress deemed appropri-*

*ate for the various types of creditors, may not later assert any interest other than that provided for it by the confirmed plan.*

It is quite clear that the binding effect of a chapter 13 plan extends to any issue actually litigated by the parties and any issue necessarily determined by the confirmation order, including whether the plan complies with sections 1322 and 1325 of the Bankruptcy Code. For example, a creditor may not after confirmation assert that the plan was not filed in good faith, as required by section 1325(a)(3); *that the creditor should have been paid interest;* that the debtor is ineligible for chapter 13 relief; or that the plan is otherwise inconsistent with the Code in violation of section 1322(b)(10) or section 1325(a)(1).

5 *Collier on Bankruptcy* ¶ 1327.01[1] (15th ed. 1993) (emphasis added).

"A number of courts have held that the failure of a secured creditor to object to its treatment in the [Chapter 13] plan may be deemed to be acceptance of the plan. This result is in fact mandated in some districts by local rule." 5 *Collier on Bankruptcy* ¶ 1325.06[3] (15th ed. 1993).

A number of courts have ruled upon the issue of finality of a Chapter 13 confirmation order.

In *In re Pence,*[10] the creditor was owed $47,000. The debt was secured by a greenhouse appraised at $58,500. The Chapter 13 plan provided for the creditor to receive the greenhouse in exchange for the creditor releasing its mortgage on the debtor's residence. The creditor did not object, and the bankruptcy court confirmed the debtor's Chapter 13 plan. The creditor later learned that the greenhouse was worth substantially less than $58,500. The creditor moved for revocation of the confirmation order. The bankruptcy court denied the motion. The Seventh Circuit Court of Appeals affirmed and stated:

Creditors, especially lending institutions like Pacesetter, must follow the administration of the bankruptcy estate to determine what aspects of the proceeding they

10. 905 F.2d 1107 (7th Cir.1990).

may want to challenge. Pacesetter was not entitled to stick its head in the sand and pretend it would not lose any rights by not participating in the proceedings.

905 F.2d at 1109.

In *Lawrence Tractor Co. v. Gregory (In re Gregory )*,[11] the Chapter 13 debtor proposed a zero payment plan to unsecured creditors. The bankruptcy court confirmed the plan. Lawrence, a creditor, did not appear at the confirmation hearing and did not appeal the order of confirmation. Two months later Lawrence argued that a Chapter 13 plan that proposed zero payment on an unsecured claim did not "provide for" the claim. The Ninth Circuit Court of Appeals stated:

> However, this court need not rule on the legality of zero-payment plans in general or of Gregory's in particular. The order confirming the plan has become final. Lawrence's failure to raise this objection at the confirmation hearing or to appeal from the order of confirmation should preclude its attack on the plan or any provision therein as illegal in a subsequent proceeding.
>
> This was the approach of the bankruptcy appellate panel, which correctly stated that it was without jurisdiction to consider Gregory's "good faith" objection to the plan. "Questions of this sort should have been raised at the time of confirmation and by appeal immediately thereafter. The time for appeal on the issue of good faith had long passed when the instant adversary proceeding was instituted."

705 F.2d at 1121.

In *In re Szostek*,[12] the bankruptcy court had confirmed a Chapter 13 plan "which did not provide for the calculation of present value of the creditor's claim, a requirement of § 1325(a)(5)(B)(ii)." The issue on appeal to the circuit court was "whether, in the absence of fraud, the failure of a creditor to attend the confirmation hearing, object timely to the plan, or appeal the order of confirmation, regardless of the reason, precludes the creditor from obtaining full recovery of the present value of its claim when such was

not provided for in the confirmed plan." 886 F.2d at 1408.

The circuit court discussed a number of appellate cases on the issue of finality. The circuit court stated:

> We conclude that, once the Szosteks' plan was confirmed, it became final under § 1327 and, absent a showing of fraud under § 1330(a), it could not be challenged under § 1325(a)(5)(B)(ii) for failure to pay Kissell the present value of its claim.
>
> . . . .
>
> While we do not understate the importance of the obligation of the bankruptcy court or the trustee to determine that a plan complies with the appropriate sections of the Bankruptcy Code prior to confirmation of the plan, we nonetheless recognize that the affirmative obligation to object to the Szosteks' plan rested with Kissell, not with the bankruptcy court or the trustee. As noted by the Court of Appeals for the Tenth Circuit in *In re Ruti–Sweetwater, Inc.*, 836 F.2d 1263 (10th Cir.1988), creditors are obligated to take an active role in protecting their claims. *See also In re Record Club of America*, 38 B.R. 691, 696 (M.D.Pa.1983) (the Bankruptcy Code contemplates that concerned creditors will take an active role in protecting their claims). Otherwise, Rules 3017 and 3020(b), which set a deadline for filing objections to a plan, would have no substance. Kissell's position that, even in the absence of fraud, a confirmed plan which does not comply with the present value provision in § 1325(a)(5)(B)(ii) can be vacated is inconsistent with the general policy favoring the finality of confirmed plans as evidenced by the Supreme Court's decision in *Stoll [v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938)].

886 F.2d at 1413–14.

In *In re Walker*,[13] the Chapter 13 debtor proposed to modify the rights of the holder of a residential mortgage. The debtor's proposed plan made no provision for payment of interest on the secured claim. The creditor

---

11. 705 F.2d 1118 (9th Cir.1983).

12. 886 F.2d 1405 (3rd Cir.1989).

13. 128 B.R. 465 (Bankr.D.Idaho 1991).

did not object to confirmation or appeal the order confirming the plan. The creditor later contended that the debtor had defaulted under the original terms of the mortgage. The debtor contended that the creditor was bound by the terms of the confirmed plan. The bankruptcy court noted that the debtor's modification of the original mortgage terms was a violation of section 1322(b)(2) and that the plan could not have been confirmed if the violation had been timely asserted by the creditor. The bankruptcy court held that the creditor was bound by the confirmed plan and stated:

> The Code and Rules require that a debtor notify his creditors of his intentions through appropriate service of the plan and hearing notices. *See* 11 U.S.C. § 1324; B.R. 2002(b), 3015; L.B.R. 313(a). Once the debtor has satisfied this duty, the creditor bears the burden of taking affirmative steps to evaluate, advance, and protect its rights. *In re Davis*, 90 I.B.C.R. 50, 52. The rule is, simply, that the acceptance of the provisions of a plan by a creditor is inferred from the absence of a timely objection. *In re Szostek*, 886 F.2d 1405, 1413 (3rd Cir.1989).
>
> Because Chapter 13 was designed to grant maximum flexibility to the parties in fashioning the terms of an acceptable repayment plan, *See* S.Rep. No. 989, 95th Cong., 2d Sess. 141 (1978) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5927, neither the Trustee nor the Court should be expected to independently review individual provisions made for secured creditors who have received proper notice of the proceedings and who do not object. It is not contrary to the law, for a variety of practical or strategic reasons, for a creditor to stipulate or consent to be treated in a manner not technically as stringent as required in the Code.

## Conclusion

In summary, while the policy in favor of protecting the rights of mortgage lenders granted by the Code is sound, it must under these facts give way to the wisdom of promoting the finality of the Court's confirmation order. Under this approach,

there is a potential that an unsophisticated mortgage lender may inadvertently lose valuable rights extended by the Code because of its inaction. However, if confirmed plans could be routinely upset by late-filed objections to claim treatment, Chapter 13 would certainly become a toothless tiger.

128 B.R. at 468.

Turning to the case at bar, SunTrust was timely served with Debtor's proposed Chapter 13 plan. The proposed plan provided that SunTrust would not receive interest on the arrearage. SunTrust did not object to or appeal the confirmation of the plan. SunTrust was represented by counsel in Debtor's Chapter 13 case. The Court is persuaded that SunTrust cannot now contest the terms of the confirmed Chapter 13 plan.

■ SunTrust contends that Trustee is equitably estopped from objecting to its proof of claim. SunTrust contends that Trustee should have objected to its proof of claim prior to confirmation of the Chapter 13 plan. SunTrust cites no authority for this assertion. The facts clearly show that it was SunTrust, not Trustee, which slept on its rights. "Equity aids the vigilant, not those who slumber on their rights." *Allred v. Chynoweth*, 990 F.2d 527, 536 n. 6 (10th Cir. 1993).

SunTrust could have prevented the adverse consequences of the Court's confirmation order by timely objecting to confirmation of Debtor's Chapter 13 plan.

The Court would also note that it is not persuaded that Trustee could be equitably estopped from performing her affirmative duty to "object to the allowance of any claim that is improper." 11 U.S.C.A. § 1302(b)(1) (West 1993); 11 U.S.C.A. § 704(5) (West 1993).

An order in accordance with the memorandum opinion will be entered this date.

## ORDER

In accordance with the memorandum opinion entered this date; it is

ORDERED that the "Objection to Claim" filed by Camille Hope, Standing Chapter 13 Trustee, on the 9th day of December, 1993, hereby is sustained; and it is further

ORDERED that the amended proof of claim filed by SunTrust Mortgage, Inc. on the 8th day of September, 1993, hereby is disallowed insofar as it asserts a claim for interest in the amount of $777.43.

SO ORDERED.